UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

JOHN R.  HUFFMAN,

                                        Plaintiff,

                    -against-

THE CITY OF NEW YORK; MAYOR OF THE CITY OF NEW
YORK ERIC ADAMS; POLICE COMMISSIONER FOR THE CITY
OF NEW YORK KEECHANT SEWELL; NYPD CHIEF OF
DEPARTMENT JEFFREY MADDREY; NYPD CHIEF OF PATROL
JOHN CHELL; and NEW YORK CITY POLICE DEPARTMENT
MEMBERS JOHN or JANE DOE #1-6;

                                        Defendants.
-------------------------------------------------------------------------------X

Case No.:

**VERIFIED
COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

    Plaintiff, JOHN R.  HUFFMAN, by his attorneys, KAISHIAN & MORTAZAVI LLC, by

MARYANNE K. KAISHIAN, ESQ., an attorney duly licensed to practice before the United States

District Court for the Eastern District of New York, hereby complains of Defendants as follows:

## PRELIMINARY STATEMENT

    1.      On November 22, 2022, Plaintiff John R. Huffman ("Plaintiff" or "Mr. Huffman"),

a resident of Kings County, City and State of New York, was commuting home from work when

he was placed under custodial arrest by Defendants. Mr. Huffman acknowledged marking a

subway car using a small black marker with a pro-LGBTQ message in the wake of a hate-

motivated mass shooting. Defendants immediately accosted Mr. Huffman when he exited the train

onto the subway platform. Defendants shoved Mr. Huffman into a wall and applied overly tight

handcuffs to his wrists. Upon Defendants' request, Mr. Huffman immediately provided his true

legal identity and his valid legal identification. Nevertheless, suspecting Mr. Huffman only of

Penal Law P.L. § 145.00, Criminal Mischief, a non-violent misdemeanor charge, Defendants

placed Mr. Huffman under arrest and transported him to the NYPD's Transit Bureau 33 in Kings County, where he was detained for approximately six (6) hours until his release early the following morning, on or about November 23, 2022.

2.      The charges against Mr. Huffman were dismissed.

3.      Mr. Huffman now brings the instant case before this Court for, *inter alia*, excessive force, excessive detention, and various violations of his statutory and constitutional rights pursuant to New York State law.

**PARTIES**

4.      At all times mentioned herein, Plaintiff, JOHN R. HUFFMAN, was and is a resident of Kings County in the City and State of New York.

5.      At all relevant times mentioned herein, Defesndant City of New York ("Defendant City" or "New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

6.      Defendant New York City Mayor ERIC ADAMS was at all times relevant to this Complaint the Mayor of New York City. As Mayor, Defendant Adams, at all relevant times, was an elected officer and the "chief executive officer of the city," New York City Charter § 3, and had final authority to appoint and/or remove any NYPD employees and agent, including the New York City Police Commissioner. He is sued individually and in his official capacity.

7.      Defendant NYPD Commissioner KEECHANT SEWELL was at all times relevant to this Complaint the Police Commissioner of the NYPD. As Police Commissioner, Defendant Sewell, personally and/or through her authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including

policies and procedures as to personnel hiring, training, supervision, and discipline with respect to NYPD officers' performance of their duties, and constituted a City policymaker for whom the City is liable. She is sued individually and in her official capacity.

8.      Defendant NYPD Chief of Department JEFFREY MADDREY was at all times relevant to this Complaint the Chief of Department of the NYPD who had policymaking authority over the Department. At all relevant times, as Chief of Department, Defendant Maddrey had primary responsibility for NYPD operations—that is, for the police response on the street. Within the paramilitary structure of the NYPD, all NYPD uniformed members of the service were obligated to obey any lawful order given by him. He is sued individually and in his official capacity.

9.      Defendant NYPD Chief of Patrol JOHN CHELL was at all times relevant to this Complaint the Chief of Patrol of the NYPD who had policymaking authority over the Department. At all relevant times, as Chief of Department, Defendant Chell had primary responsibility for NYPD patrol operations, particularly operations involving stops of civilians on public streets, including stops conducted while on foot and and/or while operating vehicles. NYPD uniformed members of the service were obligated to obey any lawful order given by Defendant Chell. He is sued individually and in his official capacity.

10.      The true names and identities of the NYPD Member Defendants John or Jane Doe #1-6 are currently unknown to Plaintiff. They are referred to herein collectively as "Defendant Does."  At all times hereinafter mentioned, these Defendant NYPD Does were employed by the City of New York as members of the NYPD.

11.      At all times hereinafter mentioned, all individual Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official

rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

12.    Each and every act and omission by the individual Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City.

13.    The individual Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, on behalf of, and with the power and authority vested in them by Defendant City and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

14.    All Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

15.    At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

16.    Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

17.    Each individual Defendant is sued in her or his individual and official capacities.

## JURISDICTION, VENUE, and GML COMPLIANCE

18.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

19.     Venue is proper pursuant to 28 U.S.C. § 1391, *et seq.*, in the Eastern District of New York, where the actions complained of herein occurred.

20.     Plaintiff timely served Notices of Claim on the municipal Defendant within ninety (90) days of the accrual of the claims complained of herein and complied with all conditions precedent to commencing an action under New York State law.

21.     Plaintiff's damages exceed the jurisdiction of lower courts.

22.     Mr. Huffman was examined by the Defendant City of New York pursuant to GML §50-H on June 27, 2023.

23.     At least thirty days have elapsed since service of Plaintiff's Notices of Claim and adjustment and payment thereof has been neglected or refused.

24.     This action was initiated within one year and ninety days of the accrual of all Plaintiff's claims pursuant to New York State Law.

## STATEMENT OF FACTS

25.     At the time of the events giving rise to this Complaint, Plaintiff John R.  Huffman was a resident of Kings County, City and State of New York.

26.     At approximately 7:00 PM, Mr. Huffman was commuting westbound on the Brooklyn-bound L train.

27.     Two days prior to Mr. Huffman's arrest, a mass shooter had killed five people at a nightclub in Colorado Springs in an anti-LGBTQ attack.

28.     On the day of his arrest, Mr. Huffman wrote a small message, with a Sharpie marker as graffiti, in support of the community and opposing the anti-LGBTQ rhetoric alleged to have motivated this hate crime.

29.     Mr. Huffman exited the car as usual at the Bushwick Ave-Aberdeen St in Kings County, 11207, to proceed home.

30.     As Mr. Huffman was exiting the station, Defendant NYPD Does # 1 – 5 ran towards him. Defendant NYPD Does # 1 – 3 were believed to be in plain clothes. Defendant NYPD Does # 4 – 5 were wearing blue NYPD uniforms.

31.     Mr. Huffman stopped immediately upon hearing the command and seeing at least one Defendant Doe holding a badge. Mr. Huffman followed all lawful orders and waited for the Defendants to reach him.

32.     Upon doing so, Defendant NYPD Doe # 1, wearing plainclothes, threw Mr. Huffman face-first against a wall in the station, striking his chest against the wall and causing him pain and suffering.

33.     Defendant NYPD Doe # 1 – 2 placed overly tight handcuffs on Mr. Huffman. Defendants declined to loosen them despite Mr. Huffman's stated discomfort to do so.

34.     Mr. Huffman provided his full name and legal identification to Defendants, namely his valid New York State driver's license.

35.     Defendant Does #1 – 5 searched Mr. Huffman's backpack and personal belongings without consent.

36.     Defendant Does # 1 – 5 then transported Mr. Huffman to NYPD Transit Bureau 33, in Kings County, located inside the Broadway Junction MTA station.

37.     At approximately 8:00 PM, Mr. Huffman was able to contact his spouse, who contacted an attorney.

38.     The attorney, Maryanne K. Kaishian, Esq., arrived at Transit Bureau 33 approximately 9:00 PM on November 22, 2022. She was not permitted to enter the precinct.

39.     Mr. Huffman informed Defendants that he was represented by an attorney.

40.     Nevertheless, Defendants # 1 – 5 repeatedly attempted to question Mr. Huffman about the graffiti, and to ascertain whether he was responsible for any other "tags" in the area.

41.     The attorney representing Mr. Huffman further informed Defendants, through multiple phone calls and through conversations conducted at the door of the Transit Bureau, that Mr. Huffman was represented by counsel and was not to be questioned.

42.     The attorney further conveyed that Mr. Huffman was to be released in accordance with the law, namely § 150.20(1) of the C.P.L., and upon the facts not disputed by Defendants, including: that Mr. Huffman was accused only of criminal mischief, that he had provided valid identification upon request, and that he was to be issued a Desk Appearance Ticket.

43.     After approximately three hours of waiting outside Transit Bureau 33 for Mr. Huffman's release, approximately five hours after Mr. Huffman's arrest, and having been barred from speaking with Mr. Huffman since arriving, the attorney made another call to Transit Bureau 33.

44.     The attorney informed the individual who answered the phone, Defendant Doe # 6, believed to be assigned to the post of Desk Sergeant within the Transit Bureau and who was answering calls to the Bureau, that Mr. Huffman needed to be released in accordance with the law, and demanded an explanation for his five-hour detention.

45.     Despite the statewide applicability of C.P.L., Defendant Doe # 6 informed the attorney, in sum and substance, "This is what happens when you get arrested in the State of New York."

46.     Mr. Huffman remained in custody until approximately 1:15 AM on November 23, 2022, when he was released with a Desk Appearance Ticket.

47.     No Defendants intervened in Mr. Huffman's unlawful assault or confinement despite being present for it and despite the opportunity to do so.

48.     Mr. Huffman spent approximately six hours under arrest in Defendants' custody at Transit Bureau 33 despite New York State law prohibiting his custodial arrest.

49.     Prior to his scheduled court appearance in Kings County for his Desk Appearance Ticket, Mr. Huffman completed one session of a diversion program, and all charges against him were dismissed.

### *Damages*

50.     Defendants forced Mr. Huffman to experience anxiety and fear related to being assaulted and wrongfully detained by police.

51.     Defendants have greatly interfered with Mr. Huffman's enjoyment and engagement in daily life.

52.     Defendants' conduct caused Mr. Huffman pain, suffering, and injuries, including injuries to his face and wrists.

53.     Defendant's conduct has caused Mr. Huffman mental anguish in addition to pecuniary damages.

54.     The full extent of Mr. Huffman's injuries and damages is not yet known.

### **FIRST CLAIM FOR RELIEF**

**Excessive Force**
***Against Defendant Does # 1 and 2 Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

55.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

56.     Defendants' use of force against Plaintiff was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted Defendants.

57.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

58.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

**Violations of Plaintiff's Due Process Rights**
*Against All Defendants Pursuant to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution*

59.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

60.     Defendants City, Adams, Sewell, Maddrey, and Chell designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in seizing Plaintiff and subjected Plaintiff to the violations of his Due Process rights described elsewhere herein.

61.     Defendants collectively and individually denied and/or frustrated Plaintiff's Due Process rights and deprived Plaintiff of liberty and property without due process of law.

62.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering,

psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

63.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### THIRD CLAIM FOR RELIEF

**Municipal Liability**
*Against Defendants City, Adams, Sewell, Maddrey, and Chell Pursuant to <u>42 U.S.C. § 1983</u> and <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978) for Defendants' Violations of Plaintiffs' Rights Under the First, Fourth, and Fourteenth Amendments to the United States Constitution*

64.    Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

65.    The Policymaker Defendants above were responsible for implementing and enforcing policies and procedures on behalf of the Defendant City of New York.

66.    The facts pleaded above describe the policies, practices, and customs Defendants subjected the Plaintiff to, including, but not limited to: policies of unlawful searches and seizures, executing custodial arrests on DAT-mandatory charges, and excessive detention in NYPD custody pursuant to these unlawful arrests.

67.    Plaintiff incorporates by reference information regarding the policies and practices of the New York City Police Department in dealing with DAT-mandatory arrests asserted in *Douglas et al. v City of New York et al.*, 153606/2021 (NY Co. 2021).

68.    Upon information and belief, Defendants have a policy and practice of initiating unlawful arrests for low-level offenses in violation of <u>C.P.L. § 150.20(1)</u>, *et seq*. This policy and practice is evinced through evidence including the statement referenced above and made to Counsel in this matter, Defendants' treatment of Mr. Huffman and other similarly situated

individuals, Defendants' failure to update Patrol Guide procedures to reflect the prohibition against such arrests, and other evidence.

69.     All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to:

      a.  Formal policies, rules, and procedures of Defendant City;

      b.  Actions and decisions by Defendant City's policymaking agents including, but not limited to, the Policymaker Defendants named above;

      c.  Customs, practices, and usage of the NYPD that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City, Defendant Adams and Defendant Sewell, and other policymaking officials;

      d.  Defendant City's deliberate indifference to Plaintiffs' rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline NYPD officers, despite full knowledge of the officers' wrongful acts, as described herein.

## FOURTH CLAIM FOR RELIEF

**False Arrest**
***Against All Defendants Pursuant to 42 U.S.C. 1983 and Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

70.     Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

71.     Defendants unlawfully restricted Plaintiff's movement and deprived Plaintiff of his liberty without a lawful warrant and without probable cause.

72.     The facts available to the NYPD Defendants at the time of Plaintiff's arrest failed to support the charge against him.

73.     Nevertheless, Defendants unlawfully arrested and detained Plaintiff on multiple occasions, and failed to eliminate the invalid i-card against Mr. Huffman following these arrests, ensuring future violations of Mr. Huffman's rights.

74.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

75.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

76.     All charges against Mr. Huffman were dismissed.

## FIFTH CLAIM FOR RELIEF

### Excessive Detention
*Against All Defendants Pursuant to 42 U.S.C. 1983 and Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution*

77.     Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

78.     Plaintiff was held in NYPD custody approximately six hours by NYPD Defendants without justification or cause.

79.     These detentions violated Plaintiff's right to be free from continued detention, and Plaintiff was aware of this detention.

80.     Defendants' conduct in continuing to detain Plaintiff was motivated by Defendants' ill will and/or in an attempt to gather additional evidence to justify Plaintiff's arrest and/or delay for delay's sake.

81.     Plaintiff's detention was in excess of all applicable rules, regulations, and restrictions upon Defendants' authority to seize and/or detain Plaintiff, who was accused of a minor and non-violent offense.

82.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

83.     Accordingly, Plaintiff is entitled to the damages requested in this Complaint.

## SIXTH CLAIM FOR RELIEF

### Failure to Train and/or Supervise
*Against Defendants City, Adams, Sewell, Maddrey, and Chell Pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978)*

84.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

85.     Defendant City, and its agents Defendants Adams, Sewell, Maddrey, and Chell, failed to train and supervise the Defendant NYPD Members.

86.     All individual Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Mr. Huffman' injuries.

87.     Defendants knew or should have known that Defendant NYPD Members were likely to violate the constitutional rights of individuals in their custody.

88.     Defendants know that NYPD Members are certain to regularly encounter situations such as those described herein—including the police approach and/or arrest and/or vehicular search of Black men—through the course of their employment.

89.     Defendants knew that there is a history of wrongful conduct in these scenarios by NYPD Members.

90.     Defendants also knew that individual NYPD Defendants have a documented history of adverse credibility findings and/or abusive conduct against individuals they encountered during their employment.

91.     Defendants further knew that training and/or supervision could ameliorate the potential harms of constitutional violations in these scenarios, including civil rights violations, coerced confessions, and physical and emotional injuries.  Nevertheless, Defendants failed to train its agents and/or employees regarding their conduct during the scenarios described herein and further failed to supervise its agents and/or employees when engaged in high-risk contact.

92.     By failing to train and supervise Defendant NYPD Members, these Defendants exhibited a conscious disregard and/or deliberate indifference for the risks posed by NYPD members' conduct absent adequate training and supervision.

93.     The harms suffered by Plaintiff are the direct result of Defendants' failures.

### SEVENTH CLAIM FOR RELIEF

**Negligent Screening, Hiring, and Retention**
***Against Defendants City, Adams, Sewell, Maddrey, and Chell Pursuant to 42 U.S.C. § 1983
and Monell v. Department of Social Services, 436 U.S. 658 (1978)***

94.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

95.     All Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Mr. Huffman' injuries.

96.     Defendant City and its agents Defendants Adams and Sewell knew that the individual Defendants had a propensity for the conduct giving rise to Mr. Huffman' injuries.

97.     Defendants failed to adequately screen, hire, or retain employees in consideration of such employees' recognizable propensity for harm.

98.     Such documented history of Defendants' willingness to lie and/or misrepresent facts while under oath and/or otherwise cause harm to individuals subjected to interactions with police renders Defendants' conduct both predictable to and preventable by policymaker Defendants.

99.     Rather than removing or disciplining NYPD members who have provided non-credible testimony to courts, policymaker Defendants have continued to employ and empower such NYPD members to continue inflicting predictable harm on individuals they interact with, including Plaintiff. Such conduct is so foreseeable as to rise to the level of deliberate indifference.

## EIGHTH CLAIM FOR RELIEF

### Breach of Duty to Protect
### *Against All Defendants Pursuant to 42 U.S.C. § 1983*

100.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

101.     The Defendant City, by its agents, had a special duty to Plaintiff and possessed sufficient knowledge that inaction would lead to the harms suffered by Plaintiff.

102.     Defendants witnessed and/or knew of the harmful conduct of fellow Defendants and merely observed and/or unreasonably ignored such conduct against Plaintiff.

103.     Defendant City and its employees and/or agents breached the existing duty to protect Plaintiff, and such inaction enabled and/or facilitated and/or exacerbated the harms caused by Defendants' conduct and suffered by Plaintiff.

## NINTH CLAIM FOR RELIEF

### Violations of New York State and City Law
*Pursuant to the New York State Constitution and New York State Common Law*

104.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

105.    As a result of the conduct described herein, Plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### I.  *Respondeat Superior*

106.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

### II.  Violations of the New York State Constitution

107.    Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I §§ 5, 11, and 12 of the New York State Constitution.

108.    A damages remedy here is necessary to effectuate the purposes of Article I, §§ 5, 11, and 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiff's rights under those sections.

### III. Wrongful Search and Seizure and Excessive Force

**The Right of Security Against Unreasonable Search and Seizure and Against Excessive Force, Regardless of Whether Such Force Is Used in Connection with a Search or Seizure**
***Against Defendant City and NYPD Defendants Pursuant to***

### _New York City Administrative Code Title 8, Chapter 8 (§ 8-801, et seq.)_

64.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

65.     As described above, the Defendants violated Plaintiff's right to be free from "unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure."

66.     Pursuant to NYC Admin. Code Title 8, Chapter 8, §§ 8-801 through 8-809 of the New York City Civil Rights Law, Plaintiff maintains a private right of action against the individual NYPD Defendants and their employer, Defendant City, for this conduct.

67.     The NYPD Defendants, including Defendant NYPD Does # 1-5, as employees of the Defendant City's police department, are "covered individuals" as defined in § 8-801 of this Chapter.

68.     Pursuant to § 8-802, _et seq._, NYPD Defendants and their employer, including Defendant City, are liable to Plaintiff for the conduct described herein.

69.     Pursuant to § 8-803, Plaintiff's claims under common law or pursuant to any other law or rule are not limited or abrogated by his invocation of this statute.

70.     The remedies provided by this chapter are in addition to any other remedies that may be provided for under common law or pursuant to any other law or rule.

71.     Pursuant to § 8-804, Defendants may not invoke the defense of qualified immunity to avoid liability for this cause of action.

72.     Pursuant to § 8-806, Plaintiff is entitled to compensatory and punitive damages, attorney's fees and costs, and an order restraining the Defendants from engaging in further violative conduct.

17

## IV.    False Arrest

109.    By the actions described above, the police officials described above did falsely detain Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so.

110.    Plaintiff was conscious of the confinement and it was without his consent.

111.    Even if Mr. Huffman committed an alleged act of criminal mischief, NYPD Defendants did not have the lawful authority to arrest Plaintiff under the New York State Criminal Procedure Law (C.P.L.) § 150.20(1)(a).

112.    The C.P.L. mandates that summonses are issued for offenses other than violent felonies, sexual offense allegations, charges that may result in the issuance of an order of protection, and certain other charges specified under C.P.L. §§ 70.02, 150.20, and other provisions of the C.P.L. not applicable here.

113.    Furthermore, Mr. Huffman did not personally qualify for any of the circumstantial exceptions to the C.P.L. forbidding custodial arrest for minor offenses.

114.    Mr. Huffman did not have any active warrants, had not missed any court appearances in the previous two years, he provided his true legal identity and even presented his valid identification upon Defendants' request, he was not on probation or parole, and he did not present a danger to himself or others, nor was he alleged to do so.

115.    Defendants did not have the lawful authority to arrest Plaintiff and/or search Plaintiff and his personal belongings having accused him only of a non-violent misdemeanor offense related to graffiti, regardless of the validity of the allegations.

116.    All charges against Mr. Huffman were dismissed.

## V.    False Imprisonment and Unreasonable Detention

117.    By the actions described above, the Defendants described above did falsely detain Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so. Plaintiff was conscious of the confinement, and it was without his consent.

118.    Defendants' detention of Plaintiff exceeded the period required and permitted under New York law to issue a summons and/or Desk Appearance Ticket, and this excessive period of detention had no legal basis or legitimate purpose.

119.    Plaintiff's time in custody exceeded the period necessary for Defendants to complete their lawful duties, and Defendants are liable to Plaintiff for the time in excess of the necessary period of detention.

## VI.    Assault and Battery

120.    Defendants committed assault within the meaning of New York common law against Plaintiffs by intentionally placing Plaintiff in fear of imminent harmful or offensive contact.

121.    The force utilized by Defendants was unreasonable and intentional, and this force caused significant injury to Plaintiff.

122.    Defendants committed battery within the meaning of New York common law against Plaintiff by intentionally physically contacting Plaintiff without Plaintiff's consent.

123.    Defendants did thereby inflict assault and battery upon the Plaintiff.

## VII.    Excessive Force

124.    Defendants' use of excessive force against Plaintiff was unjustified, objectively unreasonable, and clearly intended as punishment when taking into consideration the facts and circumstances that confronted Defendants.

125.     This conduct caused Plaintiff physical injury and emotional anguish, and Defendants are liable to Plaintiff for this conduct and its resulting injuries.

## VIII.   Negligence

126.     Defendants owed a special duty to Plaintiff and breached this duty through their conduct described herein. Defendants' negligence in fulfilling their duty to Plaintiff resulted in Plaintiff's injuries and they are liable for this conduct and its resulting injuries.

## IX.     Negligent Infliction of Emotional Distress

127.     Defendants owed Plaintiff a duty of care and breached this duty of care through the conduct described herein, directly causing the emotional harms, including post-traumatic stress, insomnia, depression, and ongoing anxiety and fear.

## X.     Negligent Hiring, Training, and Supervision

128.     Upon information and belief, Defendant City supervised and trained the police officials described above and did so in a negligent manner resulting in the harms described.

129.     At all times relevant herein, Defendants were employed by, and acting in the scope of their employment with, Defendant City. Defendant City should have known that Defendant NYPD Members had a propensity for the conduct causing Plaintiff's injuries.

130.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## CONCLUSION AND DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against the individual Defendants and the City of New York as follows:

i.     Actual and punitive damages against the individual Defendants in an amount to be

20

determined at trial;

ii.      Actual damages in an amount to be determined at trial against the City of New York;

iii.     Policy change;

iv.     Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. §1988, New York State Civil Rights Law, the New York City Admin. Code, § 8-802 *et seq.*, and New York State common law; and

v.      Such other relief as the Court deems just and proper.

Dated:     Brooklyn, New York
            February 20, 2024

**KAISHIAN & MORTAZAVI LLC**

By: _____
S. MASOUD MORTAZAVI
55 Washington Street, Ste. 508
Brooklyn, New York 11201
T: (347) 662-2421
E: smm@kaishianlaw.com

By: _____
MARYANNE K. KAISHIAN
55 Washington Street, Ste. 508
Brooklyn, New York 11201
T: (347) 662-2421
E: mk@kaishianlaw.com

## **PLAINTIFF VERIFICATION**

I, JOHN R. HUFFMAN, affirm the following to be true under the penalties of perjury:

1.      I am the Plaintiff in the above matter, *Huffman v City of New York et al*.

2.      I have read the annexed Verified Complaint and know the contents thereof, and the same are true to my knowledge, except those matters therein which are alleged upon information and belief, and as to those matters, I believe them to be true.

Dated:   02/20/2024

Signed: _____

Print: ___John R. Huffman___

Date of Birth: June 19, 1986

---

STATE OF NEW YORK            )

                                            SS.

COUNTY OF    Kings            )

On the __20__ day of __February__ in the year __2024__ before me, the undersigned notary public, personally appeared ____John R. Huffman____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notarized online using audio-video communication

Maryanne K Kaishian
Online Notary Public
State of New York
Kings County
Commission #: 02KA0015799
Commission Expires: 11/07/2027

Notary Public